IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM EUGENE SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NUMBER: |
| ) | CV-17- |
| v. ) | JURY DEMAND |
| ) | |
| MERCEDES-BENZ U.S. ) | |
| INTERNATIONAL, INC., | 7:17-cv-01253-LSC |
| Defendant. | |

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201 and 2202 and the Act of Congress known as the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by 42 §2000e *et seq.* and 42 U.S.C. §1981 providing for injunctive and other relief against race discrimination and retaliation in employment.

2. The plaintiff filed his race discrimination suit within 180 days of the

1

discriminatory treatment and ninety (90) days from the receipt of his right-to-sue letter from the EEOC. Plaintiff is filing his retaliation claim under 42 U.S.C. §1981.

## II. PARTIES

3. Plaintiff, William Eugene Sanders, is a male Caucasian citizen of the United States and a resident of Vance, Alabama. The plaintiff is employed by the defendant at its Vance, Tuscaloosa County, Alabama location.

4. Defendant Mercedes-Benz U.S. International, Inc. ("MBUSI) is a corporation doing business in the State of Alabama. MBUSI is an employer as defined by 42 U.S.C. §2000e(b). Defendant is also subject to suit under 42 U.S.C. §1981, as amended. MBUSI maintains either actual or constructive control, oversight, or direction over the operation.

## III. CAUSES OF ACTION

### A. RACE DISCRIMINATION

5. The plaintiff re-alleges and incorporates by reference paragraphs 1-4 with the same force and effect as if fully set out in specific detail hereinbelow.

6. The plaintiff has been discriminated against because of his race, Caucasian, in discipline, demotion, pay and other adverse terms and conditions of employment.

7. The plaintiff is employed by the defendant at its Vance, Alabama

location.

8. The plaintiff worked as the MPS Innovations Office Lead/Team Leader, which is a part of Series Planning, prior to his discriminatory demotion on December 21, 2015 because of his race, Caucasian.

9. The plaintiff performed all his job duties and responsibilities in this position in a satisfactory manner.

10. Prior to the plaintiff's discriminatory demotion because of his race, Caucasian, he had not been disciplined one time, in August 2005, in which the plaintiff refused to sign as he disagreed with said Level II Corrective Action. This Level II Corrective Action was some fifteen (15) years prior to the plaintiff's discriminatory demotion.

11. On December 21, 2015, the plaintiff received a Level III Corrective Action and was demoted to a team member in the body shop because of his race, Caucasian. The plaintiff was not given any reason(s) as to his demotion other than "they thought it was best and his behavior . . . was inappropriate and unprofessional . . ."

12. The plaintiff believes because the lead investigator was African-American and, there were accusations of racism, he was not treated fairly. To the contrary, the defendant did not do a thorough investigation of this incident which led

3

to the plaintiff's discriminatory demotion because of his race, Caucasian.

13. The investigation focused on getting what information the defendant could to justify in its eyes a charge of racism. A proper investigation should have gone by first checking the plaintiff's computer for any evidence, which was checked and nothing was found. Next the defendant should have asked the plaintiff questions and asked for detailed answers. Once that was done, Defendant should have questioned team members in the shop. At that point, Defendant would have found negative, neutral and positive comments. At that point, the plaintiff should have been questioned again to determine if there was a reason for the range of comments and answers for the accusations. Instead, the plaintiff was asked three questions and sent home. Also some of the team members questioned stated that they felt when their answers were not what the investigators wanted, that a play on words came in. They feel this was to get an answer they wanted even if it had nothing to do with the original question.

14. The plaintiff was in the shop the day the Human Resources representative came in to do the peer input. He asked for Dwight Barger, Jason Jones, Daniel Wallen and Shane Flynn. Shane was on nights and did not do input. Daniel was working next to the plaintiff and filled out his peer input with the plaintiff standing there and it was positive. So that would only leave the possibility of two

4

negative peer inputs not several as the defendant contends.

15. There was not one team member asked to fill out or answer a survey with any racially directed comments. There was a company tool box that was in the shop when the plaintiff came in one morning about a year and a half ago. The plaintiff received tool boxes by email and since he did not receive this one through email, he asked the team members if they knew where it had come from. Also, the plaintiff found that this same tool box was also circulated in the body shop around the same time.

16. The plaintiff contends that the defendant did not perform a thorough investigation as it contends. Specifically, if a thorough investigation would have been done as claimed and the plaintiff had been asked about the allegations - i.e., he did not want African-Americans in the shop, the defendant would have learned that Sanders asked a number of African-Americans to work or apply for jobs in the shop.

(A) James Dunnigan is a MSI contractor who has worked in the shop for almost three years. Mr. Dunnigan mentioned a few times that he was looking for another job because he needed to make more money. So as not to lose him, the plaintiff went to his supervisor each time to see what they could do so the plaintiff could keep him, because he is a good worker. Each time they gave Dunnigan raise so he would stay.

(B) Bronz Anderson was a MSI team member who also worked with the plaintiff in the shop. He left for NAOS and is now working in Assembly 2 on C-shift. The plaintiff still keeps in touch with him and have asked him if he gets hired full-time, to apply and come back to the shop.

Anderson said he would love too.

(C) Isaac Mathews, a full-time Mercedes employee, who worked in the shop every chance he had. Anytime he asked, the plaintiff would find him something to do because he did quality work and was dependable. Mathews worked in the shop until his management cut overtime and would no longer let him come.

(D) Chris Garrett, a team leader in assembly one, has expressed interest in the shop. The plaintiff had worked with Garrett before in the MPS department and knew he was sharp and thinks outside the box. So each time an opening was posted, the plaintiff let him know to apply. However, Garrett never did because he did not want to step down as a team leader.

Each of these team members are African-American.

17. The plaintiff requested to be moved back to the Quality department where he worked for fourteen years before going to the MPS department. David Olive told the plaintiff "no." Mr. Olive then said it was the plaintiff's choice but Assembly was not an option because they didn't want him talking to the people he had worked with previously. Mr. Olive also said there were no openings in the Paint department. The plaintiff asked him what was left and what was suggested was body shop. The plaintiff then told Olive if his ***only option*** was that or no job then he would have to take that job. The plaintiff ***did not***, contrary to the defendant's contention, voluntary and own his own, move to the body shop.

18. At the time of the plaintiff's discriminatory demotion based on his race,

Caucasian, his pay was $30.04/hour and now it is $28.61/hour. Also, prior to the plaintiff's discriminatory demotion, he was being considered for a promotion to Group Leader, which had been signed off on, that would have been about a $4.00/hour raise.

19. The position the plaintiff held prior to his demotion was one of the best in the organization. It was straight days. The plaintiff's present position, after the demotion, is now the worst in the organization. The work is demanding, there is no rotation on the job. The area has manpower issues as in the defendant will not put enough people in the area. The plaintiff is currently working 12 hour days including Saturdays if on days. The plaintiff further rotates to nights every two weeks.

20. The plaintiff has been treated differently than African-American employees regarding his discriminatory demotion based on his race, Caucasian. For example, Howard Branford was accused of abusive behavior toward a team member. Mr. Branford received a level 3 corrective action but was not demoted or moved from his area. Craig Ferguson was caught twice stealing time and HR never investigated the incidents. Phil McDuff was a member of HR and was caught twice having sex on the job. The second time Mr. McDuff was caught, he was moved from HR and reassigned to Trim 1. However, he was then promoted to Team Leader and soon thereafter to Group Leader. Recently, Mr. McDuff was caught "sexting" a team

member. He was demoted but put in an easy job in the body shop. None of these African-American employees received the harsh discipline the plaintiff received.

21. The defendant's proffered reasons for plaintiff's discriminatory treatment were pretext for race discrimination.

22. The plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, an injunctive and declaratory judgment is his only means of securing adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

### B. RETALIATION

23. The plaintiff re-alleges and incorporates by reference paragraphs 1-22 with the same force and effect as if fully set out in specific detail hereinbelow.

24. The plaintiff has been retaliated against because of his race, Caucasian, and his previous demotion in promotions, pay and other adverse terms and conditions of employment.

25. Since the plaintiff's discriminatory demotion based on his race, Caucasian, there have been at least three positions/promotions in which the plaintiff has been qualified to fill. However, the plaintiff has not been given the opportunity to be considered for these promotions in retaliation.

26. The positions that have been available since the plaintiff's discriminatory demotion are (1) SQO jobs - the jobs have been posted for approximately four months; however, defendant has not filled said positions; (2) X 167 Project position - position was awarded to Tameka Moore, who has only been with the defendant since 2014; and (3) Assembly Quality position - plaintiff is not sure who has been awarded these position. However, plaintiff has not been given the opportunity to be promoted/transferred to these positions since his demotion in retaliation.

27. The defendant's proffered reasons for plaintiff's discriminatory treatment were pretext for retaliation.

28. The plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay plus interest, an injunctive and declaratory judgment is his only means of securing adequate relief. The plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## IV. **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant are violative of the rights of the

plaintiff as secured by 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

2. Grant plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981.

3. Enter an order requiring the defendant to make the plaintiff whole by awarding him reinstatement and/or instatement into the position(s) and pay he would have had occupied in the absence of race discrimination and retaliation, back-pay (plus interest), front-pay, punitive and compensatory damages and/or nominal damages, declaratory and injunctive relief, and benefits.

4. The plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

## PLAINTIFF REQUESTS A JURY TRIAL ON ALL CLAIMS TRIABLE TO A JURY

Respectfully submitted,

*/s/ Gregory O. Wiggins*

Gregory O. Wiggins
Counsel for the Plaintiff

OF COUNSEL:

WIGGINS CHILDS PANTAZIS
    FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500
205/254-1500 (fax)

**DEFENDANT'S ADDRESS**
To Be Served Via Certified Mail

    Mercedes Benz U.S. International, Inc.
    1 Mercedes Drive
    Vance, Alabama 35490